# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jerry Vang,
Civil No. 15-2544 (DSD/JJK)

      Petitioner,

v.

      **REPORT AND**
      **RECOMMENDATION**

Steve Hamer, Warden, Minnesota Correctional
Facility at Stillwater, MN,

      Respondent.

---

Charles F. Clippert, Esq., Clippert Law Firm, counsel for Petitioner.

Peter R. Marker, Esq., Ramsey County Attorney's Office, and Matthew Frank, Esq., Minnesota Attorney General's Office, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

Following a trial, a Ramsey County jury convicted Petitioner Jerry Vang of murder and attempted murder, and the district court imposed one life sentence and a consecutive 90-month sentence for those crimes. Vang was fourteen years old when the drive-by-shooting that led to his conviction occurred. Vang now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1, Pet. Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody ("Pet.").) He argues that his conviction and sentence violate the United States Constitution for several reasons. First, he asserts that his sentence violates his Fourteenth Amendment right to due process and his Thirteenth Amendment right to be free from involuntary servitude because the district court did not have jurisdiction to impose such a sentence pursuant to Minnesota statutes, which places that authority in the hands of a juvenile court. (Pet. ¶ 12,

Ground One.)  Second, he contends that his sentence violates his Eighth Amendment right to be

free from cruel and unusual punishment because he was sentenced to life with the possibility of

parole after 30 years as a fourteen-year-old.  (Pet. ¶12, Ground Two.)  Third, Vang asserts that he

was deprived his Sixth Amendment right to effective assistance of counsel because his trial

attorney advised him to reject a plea bargain and proceed to trial on a theory of self-defense.

(Pet. ¶ 12, Ground Three.)  Because Vang has failed to demonstrate that he is in custody in

violation of the Constitution or laws of the United States, this Court recommends that his Petition

be denied and this case be dismissed with prejudice.

## BACKGROUND

On August 7, 2001, a fourteen-year-old Vang and an adult were on their way to a funeral

when they turned into an alley and encountered several people, including two individuals Vang

knew.  Vang got into an argument with one of them, after which Vang got out of the vehicle with

a handgun.   He shot and killed the person he had been arguing with and he shot another

individual who had been in the alley.  *Vang v. State* (*Vang I*), 788 N.W.2d 111, 113 (Minn.

2010).  The State charged Vang in Ramsey County Juvenile Court with first and second-degree

murder committed during a drive-by shooting for the victim who died, and attempted first and

second-degree murder for the victim who survived.  *Id.*  After the State attempted to have its

juvenile delinquency petition certified so that Vang could be tried as an adult, Vang appeared in

the juvenile court, and the parties indicated that they had reached a plea agreement.  *Id.*  Vang

agreed to waive a adult certification hearing, but he did not stipulate to the factors under

Minnesota law that must be satisfied for such a certification to occur.  *Id.*  Vang entered a guilty

plea to first-degree murder and attempted first-degree murder committed in the course of a drive-

by shooting.  *Id.*  The juvenile court certified the proceedings as an adult criminal case and

2

imposed a life sentence for the first-degree murder charge and a concurrent 200-month term of imprisonment for the attempt charge. *Id.* Many years later, in 2009, the State Public Defender's Office agreed to represent Vang in a petition for postconviction relief. *Id.* at 113–14 (describing Vang's requests for assistance and the public defender's eventual agreement to represent him). In his postconviction petition, "Vang argued that his adult certification was invalid, that he received ineffective assistance of trial counsel, and that the court should consider the petition in the interests of justice." *Id.* at 114. After the postconviction court denied his petition, the Minnesota Supreme Court reversed that decision, concluding that Vang's adult conviction and sentence were void because the juvenile court lacked the jurisdiction to enter them. *Id.* at 115–18. As a result, and because Vang was over 21 years old at the time of the supreme court's decision, the supreme court remanded the case to the district court, not the juvenile court, for further proceedings. *Id.* at 118 & n.6.

After the case was remanded, the Ramsey County District Court held a jury trial. As noted above, the jury found Vang guilty of first and second-degree murder committed during a drive-by shooting and of attempted first-degree murder committed during a drive-by shooting. *State v. Vang (Vang II)*, 847 N.W.2d 248, 255 (Minn. 2014). Vang was convicted on the counts of first-degree murder and the attempted first-degree murder and the court imposed a life sentence with the possibility of release and a consecutive 90-month sentence. *Id.* at 257. Following the trial, Vang appealed and was granted a stay so that he could pursue a postconviction petition, which was summarily denied. *Id.* at 255, 257. During his second appeal to the Minnesota Supreme Court, Vang argued that (1) the district court lacked subject-matter jurisdiction to preside over his case; (2) there was insufficient evidence to support his conviction; (3) the jury was erroneously instructed on drive-by shooting; (4) his life sentence with the

3

possibility of release was unconstitutional; (5) imposing a 90-month consecutive sentence was

improper; and (6) his postconviction petition should not have been dismissed without an

evidentiary hearing.  *Id.* at 257.  On May 7, 2014, the Minnesota Supreme Court issued its

decision, which rejected each of these challenges and affirmed Vang's conviction and sentence.

*Id.* at 257–68.

This habeas case followed.  As noted above, Vang raises three grounds in his habeas

petition.  First, Vang asserts that he "was tried in district court in violation of his Due Process

right to a hearing to protect his interest in a juvenile adjudication."  (Doc. No. 1-1, Mem. of Law

in Supp. of Pet. for a Writ of Habeas Corpus ("Pet'r's Mem.") 2.)  Vang also discusses the

Thirteenth Amendment's prohibition on involuntary servitude in connection with his first ground

for relief.  (*Id.* at 95–10.)  Second, Vang contends that he "received ineffective assistance of

counsel based on his attorney's advice to proceed to trial on a self-defense claim, which was

objectively unreasonable based on the facts of this case, in violation of his Sixth Amendment

right to a fair trial."  (*Id.* at 2.)  And finally, Vang's third argument is that "the imposition of a

life sentence on a fourteen year old with the first possibility of release after 30 years violates

[his] Eighth Amendment right prohibiting cruel and unusual punishment."  (*Id.*)

## DISCUSSION

## I.      Anti-Terrorism and Effective Death Penalty Act

Habeas relief is available to a state prisoner if "he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Anti–Terrorism

and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the
> Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).

The United States Supreme Court explained the meanings of the "contrary to" and
"unreasonable application" clauses in *Williams v. Taylor*, 529 U.S. 362 (2000). A state court
decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite
that reached by [the Supreme] Court on a question of law" or "decides a case differently than
th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412–13. A state
court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the
correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal court may not
issue the writ simply because it 'concludes in its independent judgment that the relevant state-
court decision applied clearly established federal law erroneously or incorrectly. Rather, that
application must also be unreasonable.'" *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)
(quoting *Williams*, 529 U.S. at 411).

With these deferential principles imposed by the AEDPA in mind, we turn to the specific
grounds raised in Vang's habeas petition.

## II. Vang's Due Process Claim

### A. Exhaustion and Procedural Default

Vang first contends that his conviction and sentence violate his Thirteenth Amendment
right not to be subjected to involuntary servitude and his Fourteenth Amendment right to due
process of law. (Pet. ¶ 12, Ground One (discussing Thirteenth Amendment); Pet'r's Mem. 9–10
(discussing both the Thirteenth and Fourteenth Amendments).) Respondent contends that the
Court should not reach the merits of these claims because Vang failed to fairly present them as

5

federal constitutional claims in state court during his direct appeal; thus, Respondent argues, these claims are both unexhausted and procedurally defaulted.  (Doc. No. 8, Resp't's Resp. to Order to Show Cause ("Resp't's Mem.") 17–18.)

Habeas relief in federal courts is only available where a prisoner has exhausted all available state court remedies.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Armstrong v. State of Iowa*, 418 F.3d 924, 925–26 (8th Cir. 2005).  The purpose of this requirement is to give states the first chance to correct federal constitutional errors raised by state prisoners.  *O'Sullivan*, 526 U.S. at 844–45; *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) ("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The prisoner satisfies this requirement when he fairly presents the claim to the state courts by referring to a specific federal constitutional right, a federal case, or a state case which raises a pertinent federal constitutional issue.  *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005); *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996).

Moreover, if a petitioner fails to exhaust available state remedies on a claim, and if the state courts will no longer hear the claim under a state procedural rule, the claim is procedurally defaulted for purposes of habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995).  For a state procedural rule to bar a claim from federal habeas review that state procedural rule must be firmly established and regularly followed.  *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).  Under Minnesota law, if a defendant has had a direct appeal, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief."  *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976).  Further, a petitioner can have the federal court

6

consider the merits of a procedurally defaulted claim only where he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows that he is actually innocent (the latter of which is not an issue in this case).  *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002).

In *Vang II*, the Minnesota Supreme Court evaluated Vang's jurisdictional claim as a matter of statutory interpretation.  After discussing the relevant statutory provisions, the court's opinion provides:

> We conclude that under Minn. Stat. § 260B.193, subd. 5(d), the district court had original and exclusive jurisdiction over appellant's offenses.  Appellant was 23 years old when his case was remanded to the district court in [*Vang I*], 788 N.W.2d at 118.  The State subsequently filed an indictment in district court charging appellant with three counts of murder committed before appellant turned 18, and consequently the district court had original and exclusive jurisdiction.  *See* Minn. Stat. § 260B.193, subd. 5(d).  Thus, consistent with the statutory scheme enacted by the Legislature, appellant became too old for the juvenile court to have exclusive jurisdiction over the case, and the district court's general jurisdiction attached under Minn. Stat. § 484.01, subd. 1(2) (2012) (providing that "[t]he district court shall have original jurisdiction in . . . all cases of crime committed or triable therein").

847 N.W.2d at 258.  The court did not discuss any constitutional dimension to this claim.

Perhaps the Minnesota Supreme Court did not address any federal constitutional issue in its decision in *Vang II* because Vang raised the federal constitutional issue for the first time in his reply brief.  In his opening brief to the Minnesota Supreme Court, Vang did not cite the Minnesota case concerned with the federal constitutional due process issue.  (Doc. No. 9-1, App. To Resp't's Mem., Ex. 6, Appellant's Br. to Minn. Supreme Ct. 18–23.)  In that opening brief, Vang argued that the Minnesota Supreme Court in *Vang I* erroneously remanded the case to the district court rather than the juvenile court based on the terms of state statutory provisions.  (*Id.*, Ex. 6, Appellant's Br. to Minn. Supreme Ct. 18–23.)  He did not cite the federal constitution, and he did not discuss a federal or state case addressing a federal constitutional issue.

The first time Vang arguably raised a federal constitutional issue[1] was when he cited a passage from *State v. Grigsby*, 818 N.W.2d 511, 517–18 (Minn. 2012), in his reply brief.  (Doc. No. 11, Pet'r's Reply 1–6.)  Vang included the following block quote from *Grigsby* in his reply brief:

> If the Legislature provides a juvenile with a statutory right to exclusive juvenile court jurisdiction, however, the juvenile does have a protectable liberty interest in a juvenile adjudication, which attaches when the juvenile court attains jurisdiction.  Absent a statutory right to exclusive juvenile court jurisdiction, a child does not have any recognized protectable liberty interest in a juvenile adjudication.  A child's constitutional right to procedural due process prevents the State from depriving the child of his liberty interest in a juvenile adjudication without notice and a hearing.  The right to due process, however, does not require the state to adopt any particular form of procedure so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself.

(App. to Resp't's Mem., Ex. 8, Appellant's Reply Br. to Minn. Supreme Ct. 7.)  Vang omitted a citation from this block quite to *Kent v. United States*, 383 U.S. 541, 553–56 (1966), a United States Supreme Court case addressing a child's federal constitutional right to due process when a state establishes exclusive juvenile jurisdiction.

Vang now argues that his citation to *Grigsby*, which relied on the omitted citation to *Kent*, was sufficient to fairly present his federal claims to the state court so that we may consider the claims now in federal habeas review.  We disagree.  The manner in which Vang raised the due process issue in his reply brief did not give the Minnesota Supreme Court a "full and fair opportunity to address and resolve the claim on the merits."  *Keeney v. Tamayo-Reyes*, 504 U.S.

---

[1]     Vang presents no argument that he fairly presented a Thirteenth Amendment claim to the Minnesota Supreme Court, and our review of the record reveals that he never raised the claim. His Thirteenth Amendment claim is therefore plainly unexhausted, and *Knaffla* would prohibit Vang from raising the claim now in a postconviction petition because the claim was known but not raised at the time of his direct appeal, rendering the claim procedurally defaulted.  *McCall v. Benson*, 114 F.3d 754, 757–58 (8th Cir. 1997).  Accordingly, Vang is not entitled to a writ of habeas corpus based on his claim in Ground One that his conviction and sentence violate his rights under the Thirteenth Amendment.

1, 10 (1992).  A reasonable judge reading Vang's reply brief, and who was familiar with the manner in which Vang had raised his jurisdictional claim in his opening brief, would not have understood that, by citing to *Grigsby* and omitting its citation to *Kent*, Vang thereby intended to raise a due process claim under the Fourteenth Amendment of the United States Constitution. Although a petitioner need not "cit[e] 'book and verse on the federal constitution'" to fairly present a claim, *Piccard v. Connor*, 404 U.S. 270, 278 (1971), we believe Vang's buried reference to the due process issue he now seeks to raise in this habeas case was not sufficiently explicit to fairly present the claim to the state court.  *Compare Dansby v. Hobbs*, 766 F.3d 809, 823 (8th Cir. 2014) (concluding that habeas petitioner fairly presented claims to Arkansas Supreme Court where his brief discussed the Sixth Amendment's confrontation provision and cited both state and federal cases addressing the requirements of the federal Confrontation Clause), *with Carney v. Fabian*, 487 F.3d 1094, 1097 n.3 (8th Cir. 2007) (concluding that the requirement that a habeas petitioner "must have explicitly referred the state courts to the United States Constitution or federal case law" was "not satisfied by the vague references petitioner relies on here" where his brief on direct appeal cited only Minnesota state law to support his argument that failure to give a jury instruction affected his "fundamental rights") (internal quotations omitted); *see also Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988) ("The ground relied upon [in state court] must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."); *Cf. Fraction v. Minnesota*, 678 F. Supp. 2d 908, 919–21 (D. Minn. 2008) (concluding that attaching a brief to the Minnesota  Court of Appeals, which included a federal constitutional challenge, to a petition for review to the Minnesota Supreme

Court was not alone sufficient to fairly present a federal constitutional challenge to the Minnesota Supreme Court).

Moreover, under Minnesota law, Vang did not properly raise the claim according to state procedure.  "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims."  *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848 (1999)).  Vang waived state-court consideration of any due process claim he had by failing to raise it as a federal constitutional claim in the Ramsey County District Court following the remand in *Vang I* and by waiting to present it for the first time in his reply brief in *Vang II*.  *See State v. Paige*, 256 N.W.2d 298, 304 (Minn. 1977) (declining to consider issues raised for the first time in a reply brief in a case where the theory was not raised in the lower courts).  In addition to that waiver, Vang cannot now raise his due process claim in a postconviction proceeding because *Knaffla* precludes him from doing so in a new state postconviction proceeding.  *See Knaffla*, 243 N.W.2d at 741 (precluding consideration of postconviction petitions that raise matters presented and rejected in a direct appeal and matters known but not raised during a direct appeal).  Claims barred under *Knaffla* for this reason are procedurally defaulted for federal habeas review.  *McCall*, 114 F.3d at 757–58.

Because Vang's Fourteenth Amendment due process claim is procedurally defaulted,[2] Ground One of his Petition provides no basis for the Court to issue a writ of habeas corpus.

### B.  The Merits

We are not required to reach the merits of Vang's Fourteenth Amendment due process claim raised in Ground One of his habeas petition because it has been procedurally defaulted. Nevertheless the Court finds that this claim lacks merit.  *Cf. Luton v. Grandison*, 44 F.3d 626,

---

[2]     Vang presents no argument that there is cause for this procedural default or actual prejudice.

628–29 (8th Cir. 1994) (considering the merits of a habeas petitioner's due process claim despite having concluded that it was procedurally defaulted). Vang's due process argument is based on *Kent*. He asserts that the Minnesota Legislature established a juvenile court with original and exclusive jurisdiction over offenses committed before an individual reached the age of sixteen, as was the case with his offense. The Minnesota statutes creating that jurisdiction entitle a juvenile to notice and a hearing before jurisdiction can be transferred from the juvenile court to the district court if the State wishes to try the juvenile as an adult. Because Minnesota's statutes created such jurisdiction and provided for such a hearing, Vang contends that per the United States Supreme Court's decision in *Kent*, his due process rights entitled him to receive that hearing before his case could be heard in the Ramsey County District Court instead of the juvenile court. That notice and hearing never occurred and, thus, the Minnesota Supreme Court's decision in *Vang II*, which affirmed his conviction and sentence that was imposed by the Ramsey County District Court was arguably contrary to *Kent* and a violation of Vang's due process rights. (Pet'r's Mem. 5–10.)

Vang's reliance on *Kent* is misplaced. In *Kent*, the Supreme Court construed a District of Columbia statute that provided juvenile defendants in criminal proceedings certain rights. *Id.* at 557 ("[P]etitioner—then a boy of 16—was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court."). The Court concluded that, in light of due process requirements, as a condition of a valid "waiver of jurisdiction and transfer of the matter to the District Court . . . petitioner was entitled to a hearing, including access by his counsel to the [relevant] records [and] reports" that the court would consider. *Id.*; *Corder v. Rogerson*, 192 F.3d 1165, 1167 (8th Cir. 1999) ("*Kent* was based upon the Court's construction of a District of Columbia statute, but the Court has since referred

to *Kent* as a Due Process Clause decision.") (citing *Schall v. Martin*, 467 U.S. 253, 263 (1984)).

But *Kent* says nothing about what the Fourteenth Amendment's Due Process Clause requires

under the circumstances that existed when Vang's case was remanded to the state district court

after his first appeal in *Vang I*.  Vang was twenty-three years old when that remand occurred.  As

a result, when he raised this jurisdictional issue before the Minnesota Supreme Court in *Vang II*,

the Minnesota Supreme Court analyzed the language and structure of the State's juvenile

jurisdiction statutes and concluded that Vang fell outside the juvenile court's original and

exclusive jurisdiction.  *Kent's* due process rule does not require a state supreme court to interpret

that state's statutes defining the scope of its juvenile courts' jurisdiction in any particular way,

and the Minnesota Supreme Court's decision in *Vang II* does not contravene any rule of law

established by *Kent*.

Stated differently, Vang's Fourteenth Amendment claim does not raise a constitutional

issue at all.  Instead, Vang's argument reflects a disagreement with the Minnesota Supreme

Court's conclusion that his age at the time his case was initially transferred back to the district

court meant that according to state law he no longer belonged in the Minnesota's juvenile justice

system.  There is no federal constitutional basis on which to disturb the Minnesota Supreme

Court's determination of such an issue of state law.  For these reasons, Vang is not entitled to a

writ of habeas corpus based on his Fourteenth Amendment claim in Ground One of the Petition.

## III.   Vang's Ineffective Assistance of Counsel Claim

In Ground Three of his Petition, Vang argues that his conviction and sentence violate his

Sixth Amendment right to effective assistance of counsel.  (Pet. ¶ 12, Ground Three; Pet'r's

Mem. 10–14.)  Vang contends that his trial counsel provided him ineffective assistance when his

attorney advised him to reject a plea bargain on a lesser charge, which would have carried a

lesser sentence than he received following his jury trial, and to proceed to trial on a theory that

he was not guilty because he acted in self-defense.  (Pet'r's Mem. 10.)  Vang asserts that the

Minnesota Supreme Court unreasonably applied clearly established United States Supreme Court

precedent in determining that his trial attorney's advice was not objectively unreasonable.  (*Id.* at

11–12.)  Vang also argues that he was prejudiced by his attorney's incompetent advice, (*id.* at

12–13), and that the state courts' decisions were "based on an unreasonable determination of

facts," (*id.* at 14).

### A.  Unreasonable Application

The Sixth Amendment provides criminal defendants with the right to effective assistance

of counsel.  U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984).  This right

to effective assistance of counsel applies during plea negotiations.  *See McCann v. Richardson*,

397 U.S. 759, 771 (1970).  When a defendant claims that he received ineffective assistance of

counsel in relation to counsel's performance during the plea-bargaining process, the United

States Supreme Court applies the two-part test established in *Strickland*.  *Lafler v. Cooper*, 132

S. Ct. 1376, 1384 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  To succeed on such a

challenge to a conviction and sentence under that two-part test, the defendant must "show that

counsel's representation fell below an objective standard of reasonableness" and that he suffered

prejudice, meaning "that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  *Id.* (internal citations and

quotations omitted).

The Minnesota Supreme Court discussed the following facts relevant to Vang's self-

defense theory at trial.  The court explained that Vang "presented evidence at trial that David

[the shooting victim who died] intended to seriously harm or kill [Vang]."  *Vang II*, 847 N.W.2d

at 267. Vang also testified that "David and Kou [the victim who was wounded in the shooting]

had come to his house on July 6 [over a month before the shooting], that David had 'rushed' him

without provocation, and that David and Kou beat him while he was on the ground and then

David grabbed a shovel and tried to seriously injure him." *Id.* Vang testified to being afraid, up

until the day of the shooting, August, 7, 2001, of David's intentions to hurt or kill him. *Id.* Vang

testified that David drove by his house shortly after the July 6, 2001 incident and "'flicked' him

off, and then two days before the shooting, David came by [Vang's] house looking for him." *Id.*

Vang explained that when he arrived in the alley on August 7, 2001, he wanted to "smooth

things over with David and Kou[,] [b]ut David 'got angry.'" *Id.* But David approached him and

"yelled at him in a threatening manner," causing Vang to be afraid because David was "bigger

than him, and he remembered being beaten to the ground by David in the previous fight." *Id.*

"There was also evidence that [Vang] did not have an opportunity to retreat because the alley

was narrow, there was a fence and two cars directly behind him, and the driver had also gotten

out of the car and appellant did not have the keys to the car." *Id.* Vang said that he felt he had

no choice but to shoot in order to save himself. *Id.*

     In addressing Vang's claim that his counsel was ineffective for advising him to present a

self-defense theory based on these facts, the Minnesota Supreme Court explained as follows:

> We conclude that if appellant's trial counsel advised him to reject the State's plea
> offer and proceed to trial on a claim of self-defense, such a recommendation was
> not objectively unreasonable. The district court concluded the evidence was
> sufficient to support [Vang's] self-defense theory, and instructed the jury
> regarding that defense. Although it is a close call, we cannot say that trial
> counsel's alleged advice was objectively unreasonable.

*Vang II*, 847 N.W.2d at 268. The court also noted that Vang "was represented at different times

before trial by the Ramsey County Public Defender's Office, and by two other lawyers." *Id.* It

explained that one of his lawyers "allegedly advised [him] that he did not have a viable self-

14

defense claim, but the other lawyer and his associate allegedly advised [Vang] that he had a

viable defense claim." *Id.* In rejecting Vang's Sixth Amendment claim, the court ultimately

concluded:

> On this record, it was a judgment call on whether to proceed to trial based on a
> self-defense theory. Certainly, it was a close call. In hindsight, self-defense did
> not work before the jury. But we cannot say the attorney's alleged advice fell
> below an objective standard of reasonableness. There is a difference between
> rejecting a plea based on erroneous legal advice, . . . and rejecting a plea based on
> a plausible but ultimately unsuccessful defense. We therefore conclude that the
> postconviction court did not err when it summarily denied [Vang's] petition for
> postconviction relief.

*Id.* The Minnesota Supreme Court did not reach the prejudice prong of the *Strickland* test

because it determined that Vang's trial counsel's performance was not objectively unreasonable.

Vang relies on *Lafler* to support his Sixth Amendment ineffective-assistance claim. In

*Lafler*, the defendant admitted to firing a gun at the head of a woman named Kali Mundy, but

when he missed and Mundy fled, he pursued her, firing several more times, and eventually

hitting Mundy below the waist. 132 S. Ct. at 1383. Among other crimes, the state charged the

defendant with assault with intent to murder. But the defendant's attorney "convinced him that

the prosecution would be unable to establish his intent to murder Mundy because she had been

shot below the waist." *Id.* Based on this advice, the defendant went to trial and received a

lengthier sentence than he would have received under the plea agreement originally offered by

the prosecution. *Id.* He later challenged that sentence in state court on Sixth Amendment

grounds, claiming that his attorney's assistance was ineffective, but the state courts denied his

claim. *Id.* The defendant then sought habeas relief in federal court, and the district court granted

his habeas petition, ordering the state to specifically perform the plea agreement. *Id.* The Sixth

Circuit affirmed, and by the time the case reached the United States Supreme Court, "all parties

[to the case] agree[d] the performance of [the defendant's] counsel was deficient when he

advised respondent to reject the plea offer on the grounds he could not be convicted at trial" because the intent element of the assault with intent to commit murder charge was negated by virtue of Mundy having been shot below the waist. *Id.* at 1384.

Unlike in *Lafler*, the State has not conceded that Vang's counsel's performance fell below an objective standard of reasonableness. But even if *Lafler* held that counsel's performance in that case was objectively unreasonable,[3] in *Lafler* the attorney's advice that his client should reject a plea offer in favor of going to trial was unlike Vang's attorney's advice in this case. In *Lafler*, the defendant's counsel informed the defendant of an "incorrect legal rule," 132 S. Ct. at 1384 (citing *Cooper v. Lafler*, 376 Fed. App'x 563, 570–71 (6th Cir. 2010)), specifically the legal rule governing intent to commit murder. Vang's attorneys did not, for example, advise Vang of an incorrect legal rule governing self-defense claims in Minnesota, such as the wrong standard for a duty-to-retreat case or the requirement that force used in self-defense must be reasonable. Rather, Vang's trial attorneys advised him to present a self-defense theory rather than plead guilty based upon an ultimately unsuccessful trial strategy.

Vang's attorneys' advice turned out to be wrong, but this does not mean they failed to provide constitutionally adequate representation. Vang's attorneys appear to have taken a risk in pursuing the strategy they did, especially considering Vang's recorded statement to detectives following the August 7, 2001 shooting (Doc. No. 1-1, App. to Pet'r's Mem. at A-32–A-46), and in light of the testimony Vang provided at trial that he did not need to shoot at the two victims and could have left the scene (Doc. No. 1-1, App. to Pet'r's Mem. at A-24). But Vang's

---

[3]     The Court noted that "[i]n light of this concession, it is unnecessary for this Court to explore the issue." *Lafler*, 132 S. Ct. at 1384. Thus, *Lafler's* holding establishes no bright-line rule for purposes of the first prong of the *Srickland* test—that is whether counsel's performance was objectively unreasonable—and instead, *Lafler's* holding is limited to the second prong of *Strickland*—whether a defendant was prejudiced by counsel's objectively unreasonable representation.

attorneys elicited sufficient evidence for the trial judge to instruct the jury on the issue of self-defense.  Thus, Vang's ineffective-assistance claim raises an issue about the strategy employed by trial counsel rather than the accuracy of his legal advice.

*Strickland's* test for such "tactical decisions" is "highly deferential" because "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  466 U.S. at 689–90.  When we view *Strickland's* test through the lens of AEDPA in considering an ineffective-assistance-of-counsel claim in a habeas petition, our review is doubly deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both highly deferential,  . . . and when the two apply in tandem, review is 'doubly' so . . . .").  The Minnesota Supreme Court correctly acknowledged that Vang's counsel made a "judgment call" and deferred to his attorneys' strategic choice even though it was a "close call." *Vang II*, 847 N.W.2d at 268.  The court also reasonably identified the "difference between rejecting a plea based on erroneous legal advice . . .  and rejecting a plea based on a plausible but ultimately unsuccessful defense."  *Id.*; *see also id.* (discussing the Minnesota's Supreme Court's application of *Strickland* in *Leake v. State*, 737 N.W.2d 531(Minn. 2007), and concluding that it was distinguishable from Vang's appeal in light of the fact that Vang's own attorneys over the course of his representation offered differing opinions whether he had a viable self-defense claim).  As observed above, Vang's ineffective-assistance claim is unlike a Sixth Amendment claim based on an attorney informing his client of an incorrect legal rule, rendering the Minnesota Supreme Court's deference to Vang's counsel appropriate under the circumstances. Applying, as we must, the second layer of deference in reviewing the Minnesota Supreme Court's decision under the AEDPA, we conclude that Minnesota Supreme Court's rejection of Vang's Sixth Amendment claim in *Vang II* did not involve "an unreasonable application of

clearly established Federal law, as determined by the United States Supreme Court." 28 U.S.C. § 2254.[4]

## B.  Unreasonable Determination of Facts

As noted above, Vang also contends that the state district court dismissed Vang's postconviction petition based on an unreasonable determination of facts.  Specifically, Vang contends that it was unreasonable for the state district court to conclude that Vang's counsel made the strategic decision to proceed on a self-defense theory.  (*See* Pet'r's Mem. 12–14 (discussing state court's allegedly unreasonable determination that Vang's counsel's acts were part of a trial strategy).)

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "'[A]n unreasonable determination of facts in light of the evidence presented in state court proceedings' occurs 'only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.'"  *White v. Dingle*, 757 F.3d 750, 755–56 (8th Cir. 2014) (quoting *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003)).  The deference owed by a federal habeas court to state court's findings of fact includes deference to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim.  *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

---

[4]    Having concluded that Vang's counsel's performance was not deficient, we do not reach the prejudice prong of the *Strickland* test.

The state district court dismissed Vang's postconviction petition without holding an evidentiary hearing based in part on the court's factual determinations that Vang's trial counsel made the strategic decision to pursue a self-defense strategy.  (Doc. No. 1-1 at A-9–10.)  The state district court explained that "[Vang's] trial attorney presented evidence [at trial] to the effect that the petitioner had previously been assaulted by [one] victim . . . and that he was concerned for his safety on the day of the shooting." (*Id.*)  The court also noted that although Vang essentially admitted that he did not act in self-defense, "[i]t strains credulity . . . to think that his attorney or any attorney would have proffered such a defense had he known that the petitioner would have testified in this manner." (*Id.* at A-10.)

Based on the evidentiary record developed in the state courts in this case, we cannot conclude that the state district court's rejection of Vang's ineffective assistance of counsel claim was based on an unreasonable determination of facts.  Vang presented evidence to the state district court in connection with his postconvcition petition that: (1) another attorney, who represented him before he retained trial counsel, had determined that the facts did not support a viable self-defense theory; and (2) Vang's trial testimony was not inconsistent with his initial statements to police during an interview following his arrest.  Though this evidence could suggest that Vang's trial counsel took a risk in advising Vang to reject a plea agreement and proceed to trial on a self-defense theory, it does not amount to a clear and convincing showing that the state district court's factual findings that Vang's trial counsel made a strategic choice lacked support in the record.  Vang presented no evidence that his trial counsel was aware that Vang would testify in the manner he did at trial, which likely impacted the jury's decision to reject his self-defense theory.  Moreover, the record before the state postconviction court included the factual showing that Vang was able to present sufficient evidence to have the trial

19

court instruct the jury on the issue of self-defense.  Accordingly, it was not unreasonable for the state district court to determine that Vang's trial counsel's decision to advise his client to reject a plea deal was part of a trial strategy.

### C.  Conclusion

Because the judgment of the Minnesota courts rejecting Cang's ineffective assistance of counsel claim on the merits did not involve either an unreasonable application of clearly established federal as determined by the United States Supreme Court or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings, 28 U.S.C. § 2254(d)(1)–(2), Ground Three of Vang's habeas petition provides no basis for relief.

## IV.   Vang's Eighth Amendment Cruel and Unusual Punishment Claim

Finally, Vang contends that his life sentence with the first possibility for parole after 30 years violates his Eighth Amendment right to be free from cruel and unusual punishment. (Pet'r's Mem. 14–18.)  Vang contends that the Minnesota Supreme Court's rejection of this claim involved an unreasonable application of the United States Supreme Court's decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012).  (Pet'r's Mem. 17–18 (arguing that the Minnesota Supreme Court read *Miller* too narrowly and that "[b]ecause Vang does not have [a] release date and may never be granted a release date from the individuals on the parole board, Vang['s] sentence is the equivalent of a death sentence").

In *Miller*, the Supreme Court held that state sentencing schemes that impose mandatory life in prison for juveniles without the possibility of parole violate the Eighth Amendment.  132 S. Ct. at 2469.  "Pursuant to Minn. Stat. § 609.185(a)(3), [Vang] was sentenced to imprisonment for life for his first-degree murder conviction [and] [i]n accordance with Minn. Stat. § 244.05,

subd. 4(b) (2012), [Vang was required to] serve at least 30 years [before] he [would] be eligible

for release." *Vang II*, 847 N.W.2d at 262.  When it rejected Vang's claim that such a sentence

violated his Eighth Amendment rights, the Minnesota Supreme Court explained that:

> *Miller* did not hold that a juvenile homicide offender could not be sentenced to
> life imprisonment *with* the possibility of release.  Instead, *Miller* held more
> narrowly that 'a judge or jury must have the opportunity to consider mitigating
> circumstances' before imposing a sentence of life in prison *without* the possibility
> of release on a juvenile . . . . Because [Vang] is eligible for release after 30 years,
> his mandatory life sentence for first-degree murder does not constitute cruel and
> unusual punishment under the Eighth Amendment and the principles of *Miller*.

*Vang II*, 847 N.W.2d at 262–63 (emphasis in original).

We cannot conclude that the Minnesota Supreme Court unreasonably applied *Miller* in

rejecting Vang's Eighth Amendment claim.  *Miller*'s holding does not render unconstitutional a

state sentencing scheme that imposes a mandatory life sentence for a juvenile offender where the

state sentencing scheme allows for the possibility that the juvenile offender may be released.

Vang essentially argues that the Minnesota Supreme Court unreasonably failed to extend *Miller*

to invalidate sentencing schemes that impose a mandatory life sentence where there is a

possibility that a juvenile offender will never be released.  (*See* Pet'r's Mem. 17 ("The line of

case[s] leading up to and including *Miller* provide that because children are constitutionally

different[,] district courts must have the possibility of considering mitigating factors.").)

However, to reach such a conclusion would go beyond an examination of how the state court

applied clearly established Supreme Court precedent because *Miller* does not clearly stand for

the proposition Vang suggests it does.  "[I]f a habeas court must extend a rationale before it can

apply to the facts at hand, then by definition the rationale was not clearly established at the time

of the state-court decision." *See White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (rejecting an

"unreasonable-refusal-to-extend rule").

Because the Minnesota Supreme Court's rejection of Vang's Eighth Amendment claim did not involve an unreasonable application of *Miller*, Ground Two of Vang's habeas petition does not entitle him to relief.

## V.  Certificate Of Appealability

If the District Court adopts this Report and Recommendation, Vang must seek a Certificate of Appealability ("COA"), if he wishes to appeal to the Eighth Circuit Court of Appeals.  Fed. R. App. P. 22(b).  Federal district courts cannot grant a COA unless the habeas petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Armstrong v. Hobbs*, 664 F.3d 1137, 1143 (8th Cir. 2011) *reh'g granted, judgment vacated* (Jan. 23, 2012), *on reh'g*, 698 F.3d 1063 (8th Cir. 2012).  "Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253."  *Kramer v. Kemna*, 21 F.3d 305, 307 (8th Cir.1 994). To make a substantial showing of the denial of a constitutional right, the petitioner must show that the issues to be raised on appeal are debatable among reasonable jurists or that a different court could resolve the issues differently, or that the issues otherwise deserve further proceedings.  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994)).

The issues raised here are straightforward, and it is unlikely, given the very deferential habeas standard of review, that another court would resolve the issues differently.  This Court therefore recommends that if the District Court adopts this Report and Recommendation, a COA should not issue.

## RECOMMENDATION

For all the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.      The Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In

State Custody (Doc. No. 1) be **DENIED**;

2.      This case be **DISMISSED WITH PREJUDICE**;

3.      Petitioner should **NOT** be granted a Certificate of Appealability.

Date: March 24, 2016

 s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.